McCULLOH (THATCHER v.). See Case No. 13,862.

McCULLOUGH (BELL v.). See Case No. 1,-256.

## Case No. 8,740a.

### McCULLOUGH v. The ECHO.

[24 Betts, D. C. MS. 25.]

District Court, S. D. New York. Jan. Term, 1858.

SHIPPING — AFFREIGHTMENT — DAMAGE TO CARGO BY SWEATING—MASTER'S CONTRACT — HELD UNDER CHARTER PARTY — ANSWER TO LIBEL — AMENDMENT.

[1. The vessel is not liable for damage to the cargo caused by the sweating of the vessel.]

[2. A ship is liable in rem upon the master's contract of affreightment, though it is let to him by charter party, where the shipper is ignorant of that fact.]

[3. An answer in an action on a bill of lading, which fails to allege that the damages claimed accrued from the sweating of the vessel, is amendable.]

[This was a libel in rem by Jethro J. Mc-Cullough and others against the steam propeller Echo (James G. Wilson, claimant) for failure to deliver goods under the terms and conditions of a bill of lading.]

BETTS, District Judge. This action claims $3000 damages for the non-delivery at this port of three several parcels of galvanized iron shipped by the libellants at Wilmington on board the propeller Echo, September 11, 1856, to be delivered in good order (the dangers of the seas only excepted) to Phelps, Dodge & Co. and others, or assignees, in New York, according to the undertaking of the master of said vessel in three several bills of lading of that date. The libel charges that the parcels of iron were respectively laden on board the propeller in good order according to the statement in the respective bills of lading, and that the vessel sailed from Wilmington with the iron on board, and arrived at the port of New York September 19, 1856, but her master failed to deliver the same according to the undertaking in the bills of lading; and owing to negligence and want of care and proper management in the transportation of said cargo the iron was found on its arrival here greatly damaged by rust, &c., not arising from dangers of the seas, &c. The answer controverts those allegations of the libel, and further denies the responsibility of the vessel for those damages, however they may have occurred, because she was chartered by the master, and the contract with the libellants for the affreightment in question was upon the personal responsibility of the master alone. The further defence was attempted to be made on the trial, by proof that the iron was stowed and dunnaged in lading it on board according to the express directions of the libellants, and if it was injured on the voyage by wetting, other than by means of

dangers of the seas, that damage was caused by such stowage of the libellants made by their agents or by occasion of the sweating of the vessel, for neither of which could the vessel be held answerable to the libellants. The latter point as a proposition of law would supply an adequate defence if sustained by testimony, as the injury would be an accident of navigation, and not the result of negligence or misfeasance on the part of the ship (Clark v. Banerall, 12 How. [53 U. S.] 272), and a vessel wholly demised by charter is under like liabilities when sailed by the charterer as by her owner (9 Stat. 636, § 5). The objection that the ship was under charter to the master would not, if properly pleaded and proved, exempt her from liability in rem upon his contract of affreightment. Under the maritime law the ship is specifically liable for breach of the bill of lading, although let by charter party, and the shipper is ignorant of that fact. The Phebe [Case No. 11,064]; The Waldo [Id. 17,056]; The Casco [Id. 2,486].

The defect of pleading in not alleging in the answer that the damages to the iron accrued from the sweating of the vessel, and that she was not answerable for such accident of navigation, would be remedied to the claimants by allowing them to amend their answer in that respect, had they established that fact by proof, but in my opinion the evidence is against them on that point, and the case will accordingly be disposed of upon the pleadings and proofs as they stood on trial.

A close scrutiny of the facts was made on the trial by the examination of ten witnesses to the condition of the iron when shipped and that of the vessel when it was received on board; the manner of stowage; the state of the weather during the voyage, and the condition of the iron when unladen in New York. It seems to me upon the whole proofs there is no sound foundation for the hypothesis that the injury which the iron sustained from wetting was caused by the sweating of the vessel; nor, if the evidence of the engineer of the vessel is to be credited, that the bottom of the hold was damp when the iron was put on board and that the fact was known to the shipper and the iron was stowed under his direction and approval in a way to avoid injury to it from that cause, is there reason for imputing the wet or rusting from the damp state of the bottom of the ship, because it is clearly proved that water was standing upon the iron and was between the places so as to drip out of the bundles in unlading and carting them from the vessel. The direct and strong proof in the case is that the cargo was exposed to rain in its transportation, and on board the vessel before delivery to the consignee thereof, and that the damages thereby sustained are at the responsibility of the vessel.

The decree in the cause must therefore be that the libellants recover in this action the

damages they have sustained in this behalf, and that an order be entered referring the matter to a commissioner to ascertain and report the amount of such damages unless the same be agreed between the parties.